**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Stanley L. PETERS, Defendant–Appellant.**

**No. 94–2780.**

United States Court of Appeals, Eighth Circuit.

Submitted March 13, 1995.

Decided June 28, 1995.

Rehearing Denied Aug. 11, 1995.

Michael J. Hansen, Lincoln, NE, argued (John Stevens Berry, on the brief), for appellant.

Steven Arthur Russell, Asst. U.S. Atty., Lincoln, NE, argued, for appellee.

Before McMILLIAN, FAGG, and HANSEN, Circuit Judges.

HANSEN, Circuit Judge.

Stanley L. Peters appeals both his conviction and sentence on charges of conspiracy to defraud the United States, causing the filing of false claims against the United States, and theft of property of the United States. Peters argues that the district court[1] erred by declining to declare a mistrial based on prosecutorial misconduct he alleges occurred during the trial. Peters argues that the district court erred at sentencing in calculating the amount of loss to establish his base-offense level under U.S.S.G. § 2F1.1, and in assessing a two-level increase under U.S.S.G. § 3B1.1(c) for his role as an organizer or leader of the criminal activity. We affirm.

## I.

Peters owned and operated an architectural and engineering firm, Stanley L. Peters and Associates. The firm had developed an expertise in designing asbestos removal procedures and in assisting school districts to obtain federal funds for asbestos removal under the Asbestos School Hazard Abatement Act (ASHAA), 20 U.S.C. §§ 4011–4022. The Fairbury Public School District in Fairbury, Nebraska, initially hired Peters' firm to assist the school district in obtaining federal funds for an asbestos removal project. Peters' firm successfully obtained federal funds totalling $600,806, which consisted of a grant of $281,176 and an interest free loan of $319,630 for the project.

The Fairbury School District then hired Peters' firm to design the abatement procedure to be used by the contractor (Brad's Asbestos Removal) which would be performing the removal of the asbestos. Brad's Asbestos Removal was a family business, owned and operated by Russell Curtis, Dean Curtis, and other Curtis family members. At some point during the process, Peters discovered that the federal funds provided were substantially in excess of what was needed for the asbestos removal project. Peters, with the assistance of Russell and Dean Curtis, developed and implemented a scheme to submit false claims to the federal government in order to use the additional money for other renovation projects at the Fairbury schools, which were unrelated to asbestos removal.

The government charged Peters with one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371, three counts of causing false and fraudulent claims to be filed against the United States in violation of 18 U.S.C. §§ 287 and 2, and one count of theft of property belonging to the United States, in violation of 18 U.S.C. §§ 641 and 2. Peters was convicted of all five counts and sentenced to 24 months of imprisonment. Peters appeals the conviction and sentence.

## II.

Peters argues that his conviction should be reversed because the Assistant United States Attorney committed prosecutorial misconduct by making facial expressions and sarcastic comments during his cross-examination of Peters. Peters argues that the district court erred in declining to declare a mistrial. We disagree.

█ " 'The test for reversible prosecutorial misconduct has two parts: (1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the de-

---
[1]. The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

734

fendant's substantial rights so as to deprive the defendant of a fair trial.' " *United States v. Jackson,* 41 F.3d 1231, 1233 (8th Cir.1994) (quoting *United States v. Hernandez,* 779 F.2d 456, 458 (8th Cir.1985)). In response to Peters' motion for a mistrial, the district court found that the Assistant United States Attorney's conduct had been unintentional, but cautioned the Assistant United States Attorney that if it occurred again, "I'm going to call you down quick and short in front of the jury." (Tr. 1179.) There were no further incidents after the district court's caution.

We agree with the district court that the single incident Peters complains about was insufficient to warrant a mistrial. We conclude that the district court handled the incident appropriately and that there was no reversible prosecutorial misconduct in this case.

## III.

Peters argues that his sentence should be reversed because the district court erred in calculating the amount of loss, a crucial element for establishing his base-offense level under U.S.S.G. § 2F1.1. The district court found that the amount of loss was $153,476, the full amount of the false claims Peters and the others submitted. This finding resulted in a seven-level increase in his base-offense level under § 2F1.1. Peters argues that because the program was in part a loan program, the district court should only have included the amount that the United States was unlikely to recover ultimately. Peters asserts that because the Fairbury Schools had pledged substantial collateral to secure the loan, the amount of loss to the United States should have been zero or, at a minimum, substantially less than $153,476. We disagree.

■ The commentary accompanying § 2F1.1 specifically provides that "[i]n a case involving diversion of government program benefits, loss is the value of the benefits diverted from intended recipients or uses." U.S.S.G. § 2F1.1, comment. (n. 7(d)). We agree with the United States that this is a case "involving diversion of government program benefits." Witnesses for the United

States testified that funds for the ASHAA program were limited each year and that when the excess $153,476 was paid out to the Fairbury School District, those funds effectively were diverted from other intended recipients. Moreover, it is readily apparent to us, at a minimum, that the $153,476 would constitute "benefits diverted from *intended ... uses.*" *Id.* (emphasis added). Accordingly, we conclude that the district court committed no error in figuring the amount of loss as $153,476.

Peters argues that we should instead look to application note 7(b), which deals with fraudulent loan applications, and reduce the amount of loss by the amount the government can expect to recover from the assets the Fairbury School District pledged as collateral. *See* U.S.S.G. § 2F1.1, comment. (n. 7(b)). We disagree. Even if a portion of the $153,476 could be characterized as an interest-free "loan" under the ASHAA program, it is clear to us that an interest-free loan from the government is still best characterized as a government benefit, not the type of loan made by a lending institution that application note 7(b) appears to contemplate. *See id.* (reduction in amount of loss for the amount "the lending institution" recovers). Thus, we conclude that application note 7(d) governs our analysis in this case and that under application note 7(d) the district court committed no error in calculating the amount of loss.

■ Peters also argues that the district court erred in sentencing him when it enhanced his sentence by two levels under U.S.S.G. § 3B1.1 after finding that he was an "organizer, leader, manager, or supervisor [of the] criminal activity." "In making a determination under U.S.S.G. § 3B1.1, the sentencing court should consider such factors as the nature of defendant's role in the offense, the recruitment of accomplices, the degree of participation in planning or organizing the offense." *United States v. Ortiz–Martinez,* 1 F.3d 662, 677 (8th Cir.1993) (citing U.S.S.G. § 3B1.1, comment. (n. 3)) (other citations omitted). We review the district court's finding under § 3B1.1 for clear error. *Id.*

Here, Dean Curtis testified that Peters came up with the plan, recruited him and his brother, Russell Curtis, to participate, and continued to provide substantial direction during the life of the plan. Russell Curtis provided essentially the same testimony. Moreover, it is undisputed that Peters was responsible for preparing and submitting the forms bearing the false claims. We conclude that the district court's finding that Peters was an "organizer, leader, manager, or supervisor" under § 3B1.1 is not clearly erroneous.

## IV.

For the foregoing reasons, we affirm both Peters' conviction and sentence.